713 So.2d 519 (1998)
Meri F. KREPPS and Edward O. Krepps
v.
Alton C. HINDELANG, III, et al.
Nos. 97-C-980, 97-CA-1034.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1998.
Rehearing Denied May 15, 1998.
*521 David B. Bernstein, New Orleans, for Plaintiffs/Appellants.
William Ryan Acomb, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for Defendants/Appellees.
Frances M. Olivier, New Orleans, for Defendants/Appellees.
Before WICKER, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Plaintiffs, Meri and Edward Krepps, appeal an adverse decision rendered by a jury after a trial on the merits of their claim for damages as a result of an automobile accident. Meri Krepps was involved in an automobile collision which occurred on the West Bank Expressway on June 26, 1993. According to the record, Ms. Krepps' vehicle was struck from behind by an automobile driven by defendant, Alton Hindelang, III. Ms. Krepps and her husband, Edward, filed suit on June 3, 1994 against Mr. Hindelang and his insurer, State Farm, as well as their own uninsured motorist carrier, GEICO.
State Farm answered the petition and made a demand for a jury trial. On March 25, 1996, after a telephone status conference was held, the trial court issued an order which set the following cut-off dates:
1. June 24, 1996 for the filing of all discovery,
2. July 24, 1996 for the filing of all motions,
3. August 9, 1996 for the filing of all amending pleadings.
However, because GEICO had not yet answered the petition and was not represented at the March 25, 1996 status conference, plaintiffs moved for and were granted a continuance without date on the above cut-off dates. That order was signed on June 24, 1996. On July 8, 1996, GEICO filed an answer and crossclaim. On September 27, 1996, plaintiffs filed a First Supplemental Petition in which they alleged additional physical injuries. On December 2, 1996, defendant, Alton Hindelang, was dismissed without prejudice from the suit on an exception of insufficiency of service of process and insufficiency of citation. After a second telephone status conference conducted by the court on December 17, 1996, the court issued an order finding that all discovery had been satisfied. That order also fixed January 17, 1997 as the date on which a joint pre-trial order must be filed, set a pre-trial conference for January 23, 1997, and set the trial of the merits for February 24, 1997.
On January 2, 1997 plaintiffs filed an "Objection to Motion to Set, Motion to Continue", to which State Farm objected. On the same day, plaintiffs also filed interrogatories and request for production of documents. On January 16, 1997 plaintiffs filed a "Motion to Continue Pre-Trial Order Deadlines".
*522 The disposition of that motion is not clear from the record; however, the record shows that all parties filed a pre-trial order on January 17, 1997.
On February 5, 1997, State Farm filed a motion to strike M. Dale Woods, C.P.A. as a witness for the plaintiffs on the ground that his name was first submitted as a potential witness in the pre-trial inserts submitted by the plaintiffs on January 15, 1997. On February 6, 1997, plaintiffs filed an Ex Parte Motion to Amend the Pre-Trial order to include Don Schindler, P.T., an expert in physical therapy, as a witness. Plaintiffs also filed a motion to strike various potential defense witnesses. On February 13, 1997, State Farm filed a motion to supplement its witness and exhibit list.
After considering the various motions at a hearing on February 18, 1997, the trial court rendered judgment denying plaintiffs' motions to add Don Schindler as a witness, and to strike defendant's witnesses. Additionally, the court granted State Farm's motions to strike plaintiffs' witness, Dale Woods, and to supplement the pre-trial order with additional witnesses.
The matter proceeded to a jury trial on the merits on February 25 and 26, 1997. In accordance with the jury finding that Meri Krepps was not injured as a result of the accident, the court rendered judgment in favor of defendants, dismissing plaintiffs' suit with prejudice.
Plaintiffs filed a timely appeal from that ruling. The principal focus of this appeal is the finding by the jury that Meri Krepps was not injured as a result of the accident. However, plaintiffs also raise issues regarding the pre-trial procedure.
Subsequent to the judgment rendered in this matter, plaintiffs filed a Motion for Judgment Notwithstanding the Verdict. After the motion was heard and denied by the trial court, plaintiffs moved for a rehearing of the motion. Both State Farm and GEICO filed Motions for Sanctions, and State Farm filed a Motion to fix Expert Fees and Costs. In three separate judgments dated July 31, 1997, the trial court granted sanctions and cast plaintiffs in judgment for $350.00 to State Farm and a like amount to GEICO. Additionally, the trial court awarded State Farm $5,130.74 in fees and costs. Plaintiffs filed an application for supervisory writs seeking review of those three rulings. That writ application has been consolidated with the appeal by order of this Court dated November 13, 1997, and will be discussed later in this opinion.[1]

FACTS
On June 26, 1993, Meri Krepps was driving in the center eastbound lane of the West Bank Expressway. As she was stopped for a red light, her vehicle was struck from behind by a vehicle driven by defendant, Alton Hindelang. Mr. Hindelang was exiting the elevated portion of the expressway and was attempting to cross over into the right lane behind Ms. Krepps. Ms. Krepps testified that she saw the impending accident in her rearview mirror. She braced herself and depressed her brake to avoid colliding with the automobile in front of her. Ms. Krepps maintained that her head hit the headrest causing soft tissue injury to her neck, shoulder and arm. She sought medical attention at the West Jefferson Hospital Emergency Room immediately following the accident. The doctor prescribed muscle relaxers and anti-inflammatory medication. When she explained to the emergency room doctor that she regularly consulted a neurologist for migraine management, and coincidentally had an appointment with him for the following Monday, she was advised to use that scheduled visit as a follow-up to the accident treatment.
Ms. Krepps explained that she began seeing Dr. Walter Truax, a neurologist, in 1990 for migraine headaches. She testified that she had no neck pain before the accident. On June 28, 1993, two days after the accident, Ms. Krepps kept her regularly scheduled visit with Dr. Truax as advised and informed him of the injuries sustained in the accident. Dr. Truax prescribed muscle relaxers.
*523 For a time after the accident, the symptoms subsided with the use of the prescribed medication. However, she soon experienced impaired mobility in her neck, and increased headaches. On Dr. Truax's recommendation, Ms. Krepps began physical therapy with Tanya Coetz at West Jefferson Hospital. The therapy consisted of moist heat, ultrasound, massage and Maitland Mobilization. Initially, the therapy sessions brought Ms. Krepps some relief of her symptoms; however, soon the pain returned even stronger. She returned to Dr. Truax who put her in traction for two weeks. The combination of therapy and traction did result in significant improvement in Ms. Krepps' condition. Ms. Krepps estimated the improvement to be about 80%.
Because her injury would not allow her to sit at the keyboard all day, Ms. Krepps stated that she had to resign her position as reservationist with the Royal Sonesta Hotel. She then secured a position as concierge at the Hotel Intercontinental. She was able to perform the duties required in that position because she was more mobile, although telephone duties are still a problem for her. She continued to see Dr. Truax for treatment of her migraine headaches and kept him updated on her neck injury. Ms. Krepps continued to have related problems with her neck though 1995, when she underwent a second round of physical therapy. She testified that she has also consulted Dr. Vichot who prescribed sleep medication and neck injections of muscle relaxers.
Ms. Krepps stated that she had a minor problem with her neck in 1991 as a result of a cumulative effect of her job duties at the Palace Caf which involved a considerable amount of telephone work. She received treatment and purchased a headset for use in her job, thereby resolving the problem. She made no claim for worker's compensation.
Ms. Krepps maintains that since the accident every aspect of her daily life has been impacted. She can no longer ride in a car without neck support, and is unable to do regular household chores. The injury has also negatively impacted her intimate relationship with her husband.
On cross-examination Ms. Krepps was confronted with her deposition in which she gave some testimony that was inconsistent with the trial testimony. In the deposition she denied any prior complaint regarding her neck and did not mention the incident in 1991 when she underwent therapy for neck pain. In the deposition she also indicated to Dr. Truax that the headaches she suffered could have been related to the neck pain. Further, she testified in deposition that she told Dr. Truax in February, 1994 that a stress-related condition related to a sexual harassment claim made against the Hotel Intercontinental could have caused the headaches and the neck pain.
The record shows that Ms. Krepps, in answer to interrogatories propounded by defendants, stated that she sustained a workrelated injury on February 16, 1991 during her employment at the Palace Caf for which she received treatment from Dr. Robert Mimeles at the Occupational Health Center in New Orleans for back and cervical strain. She was discharged from treatment on June 6, 1991.
Medical records introduced by the defendants show that Ms. Krepps was treated for several months in 1991 at the Occupational Health Center for injuries sustained when lifting a heavy box at work. She was treated for low back and cervical spine pain. A letter contained in the record from Dr. Mimeles indicates that on May 28, 1991 she was still experiencing mild pain in the cervical spine. The record also shows that she returned in June and again in July of 1991 complaining of neck pain resulting from the injury on April 9, 1991. Ms. Krepps also admitted that she sustained a work-related injury in September, 1983 which necessitated back surgery.
Edward Krepps testified at trial that his wife was in pain since the accident and described how their lives were adversely affected by the condition.
Dr. Alfredo Vichot, a specialist in rheumatology, testified that Ms. Krepps was referred to him in October, 1995 by her primary physician under her health plan for treatment of fibromyalgia. Dr. Vichot explained that Fibromyalgia is a condition in *524 which the patient suffers from aches and pains, fatigue, and sleep deprivation. Ms. Krepps' main problem areas were her neck and lower back. Dr. Vichot's treatment consisted of an anti-depressant, a muscle relaxer, analgesics, and injections of anesthetic mixed with either a muscle relaxer or with cortisone to reduce the muscle spasms. Dr. Vichot testified that he found that Ms. Krepps had muscle spasm in the neck on multiple occasions. He further opined that she had some arthritis also. Dr. Vichot also treated Ms. Krepps for a knee injury received in a slip and fall accident in March, 1996. At the time of trial, Dr. Vichot was still treating Ms. Krepps.
Dr. Walter Truax testified that he has treated Ms. Krepps since June, 1990 when she sought treatment for an episode of loss of vision followed by a left frontal headache. Dr. Truax opined that Ms. Krepps suffered from a migraine headache. Dr. Truax testified that Ms. Krepps came in on July 9, 1991, complaining of neck pain which resulted from an accident at work. Dr. Truax felt that neck injury at that time was not serious. Ms. Krepps visited Dr. Truax on June 17, 1992 neck pain. She made several other visits to Dr. Truax between June 1992 and June, 1993. On those occasions her problem was headaches, not neck pain. Shortly after the accident in question, on June 28, 1993, Dr. Truax examined Ms. Krepps. At that time she had neck pain and a limited range of motion. Dr. Truax prescribed muscle relaxers and massages. She returned on July 28, 1993 with the same neck pain and limited range of motion. At this time Dr. Truax prescribed physical therapy and diagnostic tests. Those test showed cervical spondylolysis and degenerative changes. Dr. Truax next saw Ms. Krepps on August, 12, 1993. She still complained of neck pain and had limited range of motion; however, her neurologic exam was normal. Because Ms. Krepps was still experiencing neck pain on her next visit on September 7, 1993, Dr. Truax prescribed a cervical MRI. On September 23, 1993, Ms. Krepps had a normal range of motion and Dr. Truax felt her neck problems had been resolved.
In the appeal brief filed in this Court, plaintiffs assign five errors. Four of the errors concern the pre-trial procedure and will be discussed subsequent to our discussion on the fifth assignment, which seeks a review of the jury's finding that Meri Krepps was not injured as a result of the accident. Plaintiffs argue the jury finding is clearly wrong. In the alternative, plaintiffs argue that statements made by State Farms' counsel in opening argument constitute a judicial admission that Meri sustained three-month soft tissue injury.
At the end of his opening argument, counsel stated:
"When you apply the burden of proof and the standard in this case, I think, when you're asked to deliberate, that you're going to determine Ms. Krepps had a three-month soft-tissue injury."
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. LSA-C.C. art.1853. To constitute a judicial confession, the statement must be an express acknowledgment of an adverse fact. Jones v. Gillen, 564 So.2d 1274 (La.App. 5 Cir.); writ den. 568 So.2d 1081 (La.1990). The effect is to waive evidence as to the subject matter of the admission or to withdraw the matter from issue. Id.; Fisher v. River Oaks, Ltd. 93-677 (La.App.3/16/94), 635 So.2d 1209; writ den. 94-0932 (La.6/3/94), 637 So.2d 503. Jurisprudence has added the requirement that a party must have relied on the declaration to his detriment before it can be a judicial confession. Howard Trucking Co., Inc. v. Stassi, 474 So.2d 955 (La.App. 5 Cir.1985); affirmed 485 So.2d 915 (La.); cert. den. 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986); Jefferson Parish v. Fidelity & Deposit Co., 95-951, 95-952, 95-953, 95-954, 95-955, 95-956, 95-957 (La.App. 5 Cir 4/30/96), 673 So.2d 1238, 1244; writ den. 96-1719 (La.10/4/96), 679 So.2d 1390.
We do not find that the remarks made by counsel in opening argument constitute a judicial admission that plaintiff, Meri Krepps, sustained an injury from the accident. In pleadings and throughout trial defendants opposed the assertion by plaintiff *525 that she was injured as a result of the accident. Further, there is no evidence that plaintiffs relied to their detriment on the statement made in opening argument. We do not find this argument convincing.
We do, however, find merit in plaintiffs' argument that the jury verdict is manifestly erroneous. This Court may not set aside a jury finding of fact in the absence of manifest error or unless it is clearly wrong. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615 (La.2/20/95), 650 So.2d 757, 762. To reverse a factfinder's determination of fact, an appellate court must review the entire record and meet the two-prong test as set out by the Supreme Court in Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La. 1993). This Court must find from the record that a reasonable factual basis does not exist for the finding, and that the record establishes that the factfinder is clearly wrong, making the finding manifestly erroneous. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305, 1310. Nonetheless, despite the vast discretion afforded the factfinder, this Court has a constitutional duty to review facts. The reviewing court may not merely conclude that it would have decided the case differently, but must affirm the trial court where the jury's judgment is not clearly wrong. Ambrose v. New Orleans Police Dept Ambulance Serv., 93-3099, 93-3110 (La.7/5/94), 639 So.2d 216, 221; Mullins v. State Farm, 96-0629 (La.App. 1 Cir. 6/27/97), 697 So.2d 750. Further, where two permissible views of the evidence exists the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, supra.
State Farm argues the jury's finding were based on credibility of Meri Krepps. As explained recently by the Fourth Circuit in Ruiz v. Oniate 96-2211, 96-2214, 96-2212, 96-2213 (La.App. 4 Cir. 8/6/97), 697 So.2d 1373, 1384;
The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. We may only find manifest error where a reasonable factual basis for the findings of the factfinder does not exist. This may occur where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story. (Citations omitted)
We are well aware of the vast discretion given the jury on determinations of facts. However, given the facts elicited at trial, and our constitutional duty to review those facts, we must find the jury's finding that Meri Krepps was not injured as a result of the accident to be clearly wrong. We believe the medical evidence and testimony show that Ms. Krepps aggravated a pre-existing injury to her neck and suffered a three-month soft-tissue neck injury as a result of the accident.
In reviewing the record in its entirety for manifest error in the jury's finding, we considered plaintiffs' argument that the jury rendered an inconsistent verdict. In brief to this Court, plaintiffs point out that the jury awarded $600.00 in special medical damages, while finding that no injury was sustained. The transcript of the record shows that the jury first returned a verdict form on which both the "yes" and "no" spaces to the question "(d)o you find that Meri F. Krepps sustained injuries as a result of the accident of June 26, 1993?" were checked. Further, an award of $600.00 in special medical damages was made by the jury on the form. The verdict was refused by the trial judge and the jury foreman was questioned about the inconsistency in the form. It is clear from the record that confusion existed among the jurors. After much discussion among the judge, lawyers and jurors, changes in the jury interrogatory form were made by the jurors. The "yes" and the monetary award were erased from the form and the jury was polled by the trial court in the presence of all parties. We believe the jurors did not understand that an aggravation of a pre-existing condition is a compensable injury.
Accordingly, we reverse the judgment by the trial court which held for the defendants and dismissed plaintiffs' case. We find Ms. Krepps suffered a three-month soft-tissue injury to her neck. We believe *526 the medical testimony and facts in the record support that finding. Our review of the jurisprudence convinces us that an award of $2,500.00 in general damages is appropriate.[2] We also award special damages for medical expenses from the date of the accident until September 23, 1993, the date on which Dr. Truax found the injury resulting from the accident had resolved. That award is subject to a credit for amounts previously paid by State Farm. We do not award damages for lost earnings capacity, as such damages are inherently speculative and are intrinsically incapable of being calculated with mathematical certainty. Williams v. State Through Dept. of Wildlife and Fisheries, 95-2456 (La.App. 1 Cir. 11/20/1996), 684 So.2d 1018; writ den. 96-3069 (La.3/7/97), 689 So.2d 1372. We find no evidence to warrant such an award.
Further, we find no evidence to support an award to Edward Krepps for loss of consortium. Mr. Krepps failed to carry his burden of proof in demonstrating by a preponderance of the evidence that he experienced a loss of society and service as a result of his wife's three-month injury. The elements of a loss of consortium claim are "loss of: love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, and lastly felicity." Lauriano v. Schwegmann Giant Super Market, 629 So.2d 1341 (La.App. 4 Cir.1993); writ den. 94-0123 (La.3/11/94), 634 So.2d 394. The testimony regarding this element of damages is inconsistent with this Court's factual finding that Ms. Krepps suffered a moderate soft-tissue neck injury of a short duration. Accordingly, no damages are awarded to Mr. Krepps for loss of consortium.
As previously stated, the remainder of the four assignments of error brought by the plaintiffs relate to pre-trial rulings. Plaintiffs complain of inadequate discovery, an ex parte status conference, and exclusion of various witnesses. Plaintiffs further argue the trial court erred in failing to grant a continuance of the trial. Also intertwined in the argument is a claim of deprivation of due process. Because of the nebulous nature of the arguments and their relationship to each other, we address them in one discussion.
Plaintiffs complain that the trial court should not have conducted an ex parte telephone status conference on December 17, 1996. Counsel for plaintiffs acknowledges that he knew the conference was set for that date, and was waiting for the call. Unfortunately, when the operator called to set up the conference call, counsel mistook the call for a sales call for long distance service and did not accept the call. When counsel became aware of his error shortly afterward, he telephoned the court and was informed that the telephone conference had proceeded as scheduled without him, and dates were set for pre-trial orders and trial. Plaintiffs moved to continue the trial based on the allegation that the trial court improperly blocked their participation in the status conference.
We find, from a review of the record as a whole, the plaintiffs were allowed adequate time and opportunity for proper discovery. The accident happened on June 23, 1993 and suit was filed on June 3, 1994. Discovery was begun by defendants in September, 1994. Plaintiffs did not begin discovery at that time, but were given extra time when their motion to rescind cut-off dates for discovery was granted. Trial was set approximately two and one-half years after suit was filed and three and one-half years after the accident. Further, plaintiffs were aware of the time set for the telephone status conference. While counsel's misunderstanding was regrettable, we do not agree with his characterization of the conference as ex parte. Plaintiffs knew of, but refused to accept, the conference call which would have made them a participant in the hearing.
It is well established that trial courts have vast discretion in the regulation of pre-trial discovery. Decisions made by the trial court in these matters will not be overturned absent a clear abuse of that discretion. Moak v. Illinois Central Railroad Co. 93-0783 (La.1/14/94), 631 So.2d 401; State v. Frisard 96-368 (La.App. 5 Cir. 4/29/97), 694 *527 So.2d 1032. Given the circumstances of this case, we find no abuse of the trial court's discretion in pre-trial rulings.
Plaintiffs also complain that the trial court erred in denying the motion to continue the trial based on incomplete discovery. LSA-C.C.P. Art. 1601 provides that "a continuance may be granted in any case if there is good ground therefor". LSA-C.C.P. Art. 1602 provides in pertinent part that "[a] continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence to obtain evidence material to his case." Angelo v. Billings, 96-509 (La.App. 5 Cir. 3/12/97), 690 So.2d 1013, 1016. When not mandated by article 1602, the grant of continuances are discretionary with the trial court. A trial judge has wide discretion in the control of his docket, in case management, and in determining whether a Motion for Continuance should be granted. State v. Frisard, supra. A decision on a Motion for Continuance will not be disturbed by this court absent a showing of abuse of that discretion. Metropolitan Reporters, Inc. v. Avery, 95-504 (La.App. 5 Cir. 11/28/95), 665 So.2d 547. For reasons discussed in the preceding argument on discovery rulings, we do not find that the plaintiffs have made an adequate showing to put the ruling on the continuance beyond the discretion of the trial court. Further, we find no abuse of the court's discretion.
Plaintiffs also complain that the judge made several errors in rulings made at the February 18, 1997 hearing. In one such argument, plaintiffs complain of the trial court's ruling which excluded M. Dale Woods as a witness at trial. Mr. Woods is an economic expert whose testimony plaintiffs intended to use to establish their monetary claim for lost wages. Plaintiffs assert that they employed Mr. Woods on January 13, 1997. Defendants were notified of Mr. Woods employment and the nature of his impending testimony in plaintiffs' pre-trial inserts filed on January 17, 1997. On February 5, 1997, State Farm filed a motion to strike the witness from the list on the ground that he was not timely disclosed. At the hearing on the motion, State Farm argued that it had outstanding discovery since September 22, 1994 asking plaintiffs to identify all witnesses who may be called at trial. The answer to that discovery request, filed on March 23, 1995, did not list Mr. Woods as a potential witness; nor was any indication given in the answers that an economic expert would be used at trial.
Plaintiffs argued that they had only two months to put their case together and alleged an agreement with State Farm's counsel that each party would submit economic evidence to the trial court. After hearing the arguments, the trial court found that the matter had been pending since June, 1994 and the parties had adequate time for discovery. The court further noted that plaintiffs had not amended their answers to the interrogatories. Accordingly, the trial court held that "the listing of the witness in the pre-trial order which comes shortly before the actual trial does not meet the requirements of the local rules, nor does it meet the court's own requirements with respect to trial preparation".
It is clear that the trial judge made his decision based on the fact that plaintiffs failed to adequately respond to the interrogatories propounded by State Farm almost two years prior to trial, by their failure to amend the answer. We find no error in those rulings.
As previously discussed, the plaintiffs filed a Motion for Judgment Notwithstanding the Verdict which was denied. After a hearing on the motion, the motion was denied by the trial court by judgment rendered on April 30, 1997. Plaintiffs filed a motion for rehearing asserting that the court reporter underwent surgery and was unable to transcribe portions of the trial transcript necessary for plaintiffs' argument. In the hearing, plaintiffs argued that counsel for State Farm made a judicial confession in opening argument that plaintiff had a three-month softtissue injury. Counsel for State Farm refuted that argument. In the memorandum in support of the motion for rehearing, plaintiffs argue that a transcript of the opening statement was necessary to prove the assertion. In response to the motion for rehearing, State Farm filed a Motion for Sanctions *528 which asserted that the motion for rehearing was a frivolous motion, not grounded in good faith. After a hearing on the motion for rehearing, a judgment denying the motion was rendered by the trial court. After that ruling, GEICO also filed a Motion for Sanctions, and State Farm filed a Motion to Fix Expert Fees and Costs. In three separate judgments, the trial court awarded $5,130.74 in expert fees and costs to State Farm, and $350.00 each in sanctions to State Farm and GEICO. Plaintiffs have filed an application for supervisory writs with this Court to review those decisions. As previously stated, that writ application has been consolidated with the appeal on the judgment in the main demand.
Because we reverse the jury finding in this matter, we find the trial court was in error in denying the JNOV, and in awarding expert fees and costs to State Farm. We also find error in the trial court's award of sanctions to both State Farm and GEICO. Sanctions are provided for by LSA-C.C.P. art. 863. That article is intended for exceptional circumstances and is not to be used simply because parties disagree as to the correct resolution of a legal matter. Sternberg v. Sternberg, 97-101 (La.App. 5 Cir. 5/28/97); 695 So.2d 1068, writ den. 97-1737 (La.10/13/97), 703 So.2d 618. We find the rehearing motion was grounded in good faith. Although plaintiffs' argument that counsel for State Farm made a judicial admission in the opening statement did not prevail, it was not a frivolous argument. (See discussion infra.) Accordingly, we grant the writ and vacate the rulings of the trial court in the denial of the JNOV, and in the award of sanctions, costs and fees.
For the foregoing reasons, we reverse the judgment of the trial court which ruled for the defendants and dismissed plaintiffs' case. We enter judgment for the plaintiffs and award $2,500.00 in general damages, as well as damages for medicals in accordance with this opinion after a deduction for those amounts already paid by State Farm. We vacate the judgments rendered by the trial court which awarded sanctions and costs to defendants, and which denied the JNOV. All costs of this appeal are assessed to defendants.
REVERSED.
CANNELLA, J., dissents with reasons.
CANNELLA, Judge, dissenting with reasons.
I dissent solely on the award of medical expenses. Plaintiff failed to prove, by a preponderance of the evidence, the amount of medical expenses incurred as a result of this accident.
NOTES
[1] Krepps v. Hindelang, et al., 97-C-980, filed October 6, 1997.
[2] See, Schexnayder v. Perkins, 94-228 (La.App.5 Cir. 11/16/94), 646 So.2d 1065.